## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

SHARMAINE LEWIS,

   Plaintiff,

   v.

NATIONAL BOARD OF OSTEOPATHIC
MEDICAL EXAMINERS, INC.

   Defendant.

_____

Case No.

:
:
:
:
:
:
:
:
:
:
:
:
:

## **COMPLAINT**

  Plaintiff Sharmaine Lewis (Ms. Lewis), by and through her undersigned counsel, commences this complaint against the National Board of Osteopathic Medical Examiners (NBOME), for violating federal non-discrimination statutes, namely the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et. seq. as amended, which requires equal access and appropriate accommodations.

## **INTRODUCTION**

  1. This action challenges the discriminatory denial of appropriate testing accommodations as requested by Ms. Lewis, on the Comprehensive Osteopathic Medical Licensing examination, Level 2-Cognitive Evaluation ("COMLEX II CE"), which is administered by NBOME. The discrimination challenged herein has deprived Ms. Lewis, a person with disabilities, from taking the COMLEX II CE on a level playing field with her non-disabled peers. These civil rights violations are ongoing and include discrimination and failure to provide appropriate accommodations in violation of the ADA. Immediate and permanent injunctive and declaratory relief are necessary to ensure

that Plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the COMLEX II CE as well as the COMLEX III.

2.      Defendant, NBOME has failed to provide Plaintiff appropriate testing accommodations on the COMLEX II CE, which includes extended time (50% or time and a half), testing over two days and a distraction reduced test setting. Plaintiff furnished Defendant with extensive documentation on several occasions of her disabilities and need for accommodations. Plaintiff brings this action to enforce her statutory rights to appropriate accommodations and equal educational opportunities under the ADA.

3.      Defendant administers the COMLEX II CE, which is a standardized examination and requirement for osteopathic medical licensure. COMLEX II CE is often required for osteopathic medical school graduation and residency eligibility in the United States.  Defendant has the legal, educational and professional responsibility to offer appropriate testing accommodations to individuals with disabilities on the COMLEX II CE. Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other cognitive impairments, like Plaintiff, to demonstrate their aptitude and skill level.

## JURISDICTION AND VENUE

4.      This action arises under the laws of the United States, specifically the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et. seq.* Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343. This Court further has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

5.      This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

6.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391 because NBOME's corporate executive offices are within this District. Furthermore, NBOME is doing business in this judicial district by virtue of administering the COMLEX II, grading certain examinations, transacting business within this district and accordingly has sufficient contacts for personal jurisdiction. Alternatively and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have taken place in this district.

## PARTIES

7.      Ms. Lewis is in her final year of medical school at West Virginia School of Osteopathic Medicine (WVSOM). She is a resident of and attends medical school in West Virginia. She is required to take and pass the COMLEX II CE in order to graduate from WVSOM and receive licensure. Ms. Lewis is a person with disabilities under the ADA. NBOME has previously and continues to deny Ms. Lewis's requests for appropriate accommodations on its examinations, including the COMLEX II CE.

8.      NBOME is a non-profit corporation organized under the laws of the State of Indiana. NBOME has its corporate and executive offices located at 101 West Elm Street, Conshohocken, Pennsylvania. NBOME administers the COMLEX, a three step examination, namely COMLEX I, COMLEX II and COMLEX III, the successful completion of which is required for osteopathic medical licensure in the United States.

9.      NBOME is a private entity that offers examinations related to applications and credentialing for professional purposes and as such is subject to the non-discrimination and appropriate accommodations requirements of the ADA.

10.     The NBOME prepares and administers the COMLEX II CE and COMLEX III throughout the country, including in Pennsylvania and specifically, within the Eastern District of Pennsylvania.

11.     NBOME engages in business in Pennsylvania and in this judicial district and this action arises from those business activities.

### FACTUAL ALLEGATIONS

12.     Ms. Lewis is a student in her final year of medical school. In order for Ms. Lewis to obtain her medical licensure, she is required to pass separate phases of the COMLEX, commonly referred to as COMLEX I, COMLEX II CE, COMLEX II Performance Evaluation (PE) and COMLEX III. Ms. Lewis is preparing to take the COMLEX II CE.

13.     Ms. Lewis is substantially impaired by a Specific Learning Disorder with impairments in reading. This condition substantially limits the major life activities of reading, thinking, learning, processing and taking timed examination, which are activities necessary to take the COMLEX II CE under standard conditions.

14.     NBOME has despite repeated requests, denied and continues to deny Ms. Lewis, appropriate accommodations including 50% extended time over two days and a distraction reduced setting to take the COMLEX II.

15.     If Ms. Lewis does not receive necessary accommodations on the COMLEX II CE, her examination results will not reflect her aptitude and achievement level as required by law. Moreover, without the necessary accommodations, Ms. Lewis is at imminent risk of failing the examination due to the inability to complete the examination if given insufficient time to access and answer the questions.

16.     Ms. Lewis's situation is further exacerbated by the fact that WVSOM will expel Ms. Lewis if she does not pass the COMLEX II CE on her next attempt, thereby ending her dreams of becoming a physician.

**<u>Ms. Lewis's Disabilities</u>**

17.     Throughout her education Ms. Lewis has struggled with reading and the speed at which she processes written information.

18.     During the course of her education highly qualified professionals have evaluated Ms. Lewis and diagnosed her with a Specific Learning Disorder with impairments in reading.

19.     Ms. Lewis's reading impairments substantially limit her in the major life activities of thinking, learning, reading, studying, processing information, and taking timed tests, as compared with most people.

20.     Throughout her primary and secondary education, she struggled with reading and school work. She was always one of the last students to complete tests and often required more time to complete tests and in class assignments. She utilized compensatory strategies, the extra time she was afforded informally, work arounds and extra work to perform in school. Furthermore, she received significant assistance and support from her parents, who were both educators.

21.     Ms. Lewis attended college at Tufts University. She chose to major in Anthropology because this major focused on take home essays, papers and projects rather than in class examinations. Moreover, her college major allowed her more time for organization, reading and writing.

22.     While pursuing a graduate degree in biomedical science and public health at Tufts University School of Medicine, Ms. Lewis struggled with the workload demands and examination completion. The compensatory techniques, work arounds and extensive studying was no longer sufficient to ameliorate the impact of her reading impairment. Accordingly, she took a leave of absence in order to gain a further understanding of her learning style and to identify strategies to address the difficulties she encountered in her program.

23.     In June 2010, Ms. Lewis underwent a comprehensive neuropsychological evaluation at Boston University's Danielsen Institute. The evaluation, which was conducted by highly qualified professionals, reported based on several assessments of cognition and achievement that Ms. Lewis is impaired by a reading disorder and anxiety disorder. The evaluation report presented several recommendations for accommodations and academic programing including 50% extended time for tests for in-class assignments and standardized tests; a quiet distraction reduce room for academic work; use of a tape recorder and/or note taker for classes; work with a reading specialist to learn strategies to improve reading speed; and audio tape text books.

24.     Boston University's Danielsen Institute reevaluated Ms. Lewis in June 2015. The evaluation, again conducted by highly qualified professionals, identified deficits based on several assessments. Her evaluators diagnosed Ms. Lewis with a Specific Learning Disorder, with impairment in reading (word reading accuracy; reading rate or fluency) and Unspecified Anxiety Disorder.[1]

---

[1] The change of diagnostic terminology from the 2010 to 2015 evaluations reflects a change in terminology in the revised version (Fifth Edition) of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V), which was published in May 2013.

25.     The 2015 evaluation report identified several accommodations and strategies Ms. Lewis needs in academic settings. The accommodation needs identified included: 50% extended time due to her processing speed and reading impairments; a quiet and private room for examinations due to anxiety and distractibility; copies of professors' PowerPoint presentations or handouts prior to class to assist in following along during class; textbooks and reading in audio format due to reading deficits; recording lectures due to language processing and working memory problems; use of a note taker due to processing deficits and preferential seating in class.

**Ms. Lewis's Accommodations**

26.     Ms. Lewis has been approved for accommodations in various academic settings and on several standardized examinations.

27.     Tufts University School of Medicine approved accommodations including 50% extra time for exams and a distraction reduced room for testing during her master's degree program in biomedical science, which were implemented from 2010 through her graduation 2013.

28.     In August 2011, Ms. Lewis was approved for accommodations for the Optometry Admission Test (OAT), which is a timed standardized examination administered by the American Dental Association, which included 50% extended time and a separate room.

29.     Between April 2006 to August 2012, Ms. Lewis took the MCAT six times without accommodations and received composite scores in a range from the 10th percentile to the 32nd percentile.

30.     In 2013 Ms. Lewis applied for accommodations for the MCAT and in a letter dated July 5, 2013 was approved for accommodations including 25% extended time and testing in a separate room.

31.     In July 2013, Ms. Lewis took the MCAT with accommodations and scored in the 43rd percentile.

32.     In July 2015, Ms. Lewis commenced her matriculation at WVSOM. WVSOM approved accommodations for her disability, which included 50% extended time and a quiet testing environment, which she receive for her standardized medical school examinations.

33.     Ms. Lewis also received accommodations including 50% extended time and a quiet test environment for the Comprehensive Osteopathic Medical Achievement Test (COMAT). The COMATs are medical subject matter examinations that are developed and scored by NBOME. Ms. Lewis took the following COMATs with accommodations: pediatrics, family medicine, emergency medicine, surgery, obstetrics and gynecology, internal medicine, psychiatry, and osteopathic principles and practice.

**The COMLEX II CE**

34.     The COMLEX II CE is purportedly designed to assess the osteopathic medical knowledge and fundamental clinical skills considered essential for osteopathic generalist physicians to practice osteopathic medicine.

35.     The COMLEX II CE examination under standard conditions, consists of two, four hour computer based test sessions during one day, taken in a secure time measured environment,  containing a total of 400 test questions. The test questions are

predominantly in the single best answer, multiple choice items formats.  Some questions involve audio-visual components.

36.     Ms. Lewis must pass COMLEX II CE in order to maintain her eligibility to proceed further in medical school. Furthermore, passing the COMLEX II CE is required to graduate from WVSOM, to enter into a medical residency program and to take the COMLEX III examinations. Furthermore, a failed attempt on the COMLEX II CE will result in Ms. Lewis's termination from WVSOM.

**NBOME' s Denials of Ms. Lewis's Request for Accommodations**

37.     On or about March 16, 2017, Ms. Lewis submitted an application requesting accommodations for the COMLEX I. Ms. Lewis requested 50% extended time and a distraction reduced testing environment.

38.     Annexed to Ms. Lewis's applications was documentation, which supported her request for accommodations, including reports of comprehensive neuropsychological evaluation reports from highly qualified psychologists who individually evaluated her and documentation of prior accommodations.

39.     The documentation provided to the NBOME complied with the documentation required by the NBOME for requesting accommodations on the COMLEX.

40.     The documentation demonstrated that Ms. Lewis's evaluators recommended accommodations including extended time and that she was approved for extended time in graduate school, medical school and several standardized examinations.

41.     By letter dated May 15, 2017, NBOME informed Ms. Lewis that her request for accommodations for the COMLEX I was denied and that no accommodations were approved.

42.     Ms. Lewis put forth an extraordinary effort over several months to study for the COMLEX I. She sat for the COMLEX I on September 26, 2017 without the accommodations she needs. Due to Ms. Lewis's disabilities, she was unable to complete a substantial portion of the examination, causing her to guess answers or rush through many of the exam's reading vignettes or questions.

43.     Despite the difficulty Ms. Lewis encountered completing the COMLEX I, she narrowly passed the exam with a score of 427.

44.     On November 27, 2018, after an extraordinary effort over a several month period to study, Ms. Lewis sat for the COMLEX II CE without accommodations.

45.     The COMLEX II CE requires students to read lengthy passages, often referred to as "vignettes," which are longer and more complex that the reading passages on the COMLEX I, MCAT, SAT and ACT examinations.

46.     Consequently, Ms. Lewis did not pass the November 27, 2018 administration of the COMLEX II CE, receiving a score of 344 with a passing score set at 400.

47.     In January 2019, Ms. Lewis submitted an application requesting accommodations for the COMLEX II CE. Ms. Lewis requested 50% extended time and a distraction reduced testing environment. Ms. Lewis's request included additional documentation supporting her application for accommodations.

48.     By letter dated March 27, 2019, NBOME informed Ms. Lewis that her request for accommodations for the COMLEX II CE was denied and that no accommodations were approved.

49.     On April 8, 2019, after an extraordinary effort over a several month period to study, Ms. Lewis sat for the COMLEX II CE a second time without accommodations.

50.     Consequently, Ms. Lewis did not pass the COMLEX II CE for the second time, receiving a score of 377 with a passing score set at 400.

51.     On June 25, 2019, after an extraordinary effort over a six week period to study, Ms. Lewis sat for the COMLEX II CE a third time without accommodations.

52.     Consequently, Ms. Lewis did not pass the COMLEX II CE for the third time, receiving a score of 349 with a passing score set at 400.

53.     Ms. Lewis's former counsel submitted a letter dated October 7, 2019. Counsel's letter requested a review and reconsideration of NBOME's decision denying accommodations. Counsel's letter summarized Ms. Lewis's history of prior evaluations and use of accommodations; summarized the legal standards set forth in the ADA; and requested that NBOME provide Ms. Lewis the requested accommodations.

54.     By letter dated October 16, 2019, NBOME maintained its denial of accommodations.

55.     Ms. Lewis's former attorney by letter dated November 6, 2019 responded to NBOME's October 16, 2019 letter. Counsel's letter responded to the purported reasons provided for NBOME's denial and further summarized the legal standards set forth in the ADA.

56.     By letter dated November 14, 2019, NBOME maintained its denial.

57.     Charles Weiner, Esquire, the undersigned counsel for Ms. Lewis, submitted a letter to NBOME's general counsel dated February 24, 2020. Counsel's letter requested a review of NBOME's decision. Counsel's letter identified express provisions of the ADA, decisional law and NBOME's internal policies with which the denial was at a variance and requested that NBOME approve the requested accommodations.

58.     By letter dated March 4, 2020, NBOME maintained its denial, thereby ignoring the provisions of the ADA, decisional law, and its own internal operating procedures.

59.     Over the course of Ms. Lewis's multiples requests for accommodations and requests for reconsideration, she submitted the following documentation supporting her request for accommodations:

       a.     NBOME Request for Test Accommodations Application.

       b.     Sharmaine Lewis – Personal Statement.

       c.     Boston University Danielsen Institute – Neuropsychological Evaluation Report – June 2010.

       d.     Boston University Danielsen Institute – Neuropsychological Evaluation Report – June 2015.

       e.     Robert Pepper, D.O. Dean of WVSOM- Verification – documenting approval of 50% extended time and a quiet testing environment.

       f.     AAMC – July 5, 2013 letter – approving 25% extended time and testing in a separate room.

      g.     Cora S. Lapuz-Adrovel, BSE, Supervisor, Test Center Services, American Dental Association – August 10, 2011 e-mail – documenting approval of 50% extended time and a separate room for the Optometry Admission Test (OAT).

      h.     Tufts University School of Medicine – November 26, 2019 letter – documenting approval of accommodations including 50% extended time distraction reduced testing.

      i.     Jamaica High School, New York – transcript.

      j.     College Board SAT score reports, June 1999, December 1999, January 2000.

      k.     College Board AP exam score reports – June 28, 2000

      l.     ACT Score Report – February 2000.

      m.     Nicolae Dumitrascu, Ph.D. – September 20, 2019 letter to NBOME.

      n.     NBOME's Policy #2847 (effective December 12, 2015), which provides that NBOME shall consider that a person has a disability under the ADA if that person was determined by the AAMC to be a person with a disability.

60.    The documentation furnished to the NBOME provided current and historical evaluations, which established that Ms. Lewis has a well-documented history of learning disabilities that impact her reading, learning, reading fluency, and thinking at the same rate, condition and manner as most people. Moreover, the foregoing documentation provided proof that Ms. Lewis previously received and currently receives

accommodations including extended time in school and on several standardized examinations.

61.     In particular, the neuropsychological evaluations found the following on normed assessments:

    a.     Wechsler Adult Intelligence Scale – 4th Ed (WAIS-IV) – Processing Speed Index – 10th percentile (2010).

    b.     Woodcock Johnson Test of Cognitive Abilities and Achievement – 3rd Ed (WJ-III) – Cognitive Efficiency – 24th percentile (2010).

    c.     WJ-III – Phonemic Awareness – 2nd percentile (2010).

    d.     WJ-III – Visual and Auditory Learning – 2nd percentile (2010).

    e.     WJ-III – Sound Blending – 5th percentile (2010).

    f.     WJ-III – Broad Reading – 2nd percentile (2010)

    g.     WJ-III – Letter Word Identification – 27th percentile (2010

    h.     WJ-III – Reading Fluency – 1st percentile (2010)

    i.     Woodcock Johnson Test of Achievement – 4th Ed. (WJ-IV) – Reading Fluency – 15th Percentile (2015)

    j.     WJ-IV – Broad Reading – 24th percentile (2015)

    k.     WJ-IV – Academic Fluency – 15th percentile (2015).

62.     In spite of never having met Ms. Lewis, never having tested her or never having evaluated her, NBOME ignored highly qualified professionals who observed and evaluated Ms. Lewis on several occasions over several years and her history of receiving extended time in school and on other standardized examinations, in clear violation of 28 C.F.R. part 36.

63.     The requested accommodations are necessary to appropriately accommodate the condition and manner of Ms. Lewis's limitations. Without these accommodations Ms. Lewis will be unable to demonstrate her actual knowledge, skills and abilities on the COMLEX II CE and COMLEX III.

64.     Ms. Lewis has an indisputable disability that substantially limits her major life activities of thinking, learning, reading, concentrating, studying, processing information and taking standardized examinations in the same condition and manner as most people. Under the ADA, Ms. Lewis has right to accommodations that best ensures an equal opportunity to demonstrate her skill and knowledge. The NBOME's refusal to provide the requested appropriate accommodations is a violation of Ms. Lewis's rights under the ADA.

65.     As a direct and proximate result of NBOME's violation of the ADA, Ms. Lewis will be unable to complete her medical school education in the same manner as her classmates if she does not successfully complete the COMLEX II CE. Moreover, she will and has been placed at a distinct disadvantage of competing for quality residency positions if she must take the examination without appropriate accommodations for her disability. She will be and has been irreparably harmed because she has a clear risk of failing the COMLEX II CE a fourth time, which will result in her termination from medical school without earning her degree. Moreover, she will be prevented from competing on a level playing field with other students in medical school.

66.     Because Ms. Lewis failed the COMLEX II CE three times due to being denied necessary accommodations, Ms. Lewis has been unable to obtain a residency placement and obtain her medical degree.

15

67.     Ms. Lewis has accrued significant loan debt to fund her medical school education. She anticipated being able to pay back those loans with the earnings from her residency and eventual medical practice. As a proximate result of NBOME's discriminatory conduct, Ms. Lewis's loan obligations have caused further financial loss.

68.     Ms. Lewis requires the requested accommodations on the COMLEX II CE and COMLEX III examination not to gain an advantage, but to attempt to level the playing field because her functional limitations impact her ability to take these examinations in a way that non-disabled test takers do not experience.

69.     Ms. Lewis through counsel has notified NBOME of its violation of the ADA and requested that it remedy this matter by providing the requested accommodations. NBOME has refused to correct its violations and failed to provide appropriate accommodations.

## COUNT I – VIOLATION OF THE ADA

70.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

71.     Plaintiff is an individual with disabilities within the meaning of the ADA, 42 U.S.C. §12101 et. seq.  Plaintiff is a qualified individual within the meaning of the ADA in that she will meet and has met all the eligibility criteria for taking the COMLEX II CE.

72.     Plaintiff requires appropriate accommodations to participate in a fair, full, and equal basis on the COMLEX examinations.

73.     The accommodations that Plaintiff requests, namely 50% extended time over two days and a quiet test environment, would not impose a fundamental alteration to the skill or knowledge being assessed.

74.     The NBOME has previously approved other students with disabilities for 50% extended time over two days of testing and a quiet test environment.

75.     The accommodations Plaintiff requests, attempt to level the field and allow her aptitude and abilities to be fairly and accurately measured.

76.     Defendant administers the COMLEX examinations, which are examinations related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

77.     The ADA, 42 U.S.C. §12189, requires Defendant to offer these examinations in a manner accessible to persons with disabilities.

78.     Title III of the ADA, which is enforced by the U.S. Department of Justice (DOJ), states in pertinent part, "It is discriminatory to fail to make reasonable modifications to policies, practices, and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. §12182(b)(2)(A)(ii).

79.     The DOJ regulations mandate that a private entity offering examinations modify its examinations as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion.  28 C.F.R. §§ 36.309(b) & (c).

80.     The DOJ Regulations prohibit Defendant from administering the COMLEX examinations without ensuring that the scores reported "accurately reflect the

applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

81.    The DOJ Regulations require that when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to an education plan describing services. 28 C.F.R. §36.309(b)(1)(v).

82.    The DOJ's ADA Guidance further provide, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.

83.    The DOJ's regulations require: "any request for documentation …is reasonable and limited to the need for the modification, accommodations, or auxiliary aid or service requested."

84.    Defendant has discriminated, and continues to discriminate against Plaintiff on the basis of her disability by denying her an equal opportunity to demonstrate her aptitude and achievement level on the COMLEX examinations in violation of the ADA, specifically 42 U.S.C. §12182, §12189 and 28 C.F.R. §36.309.

85.    Defendant's discriminatory policies and practices violate Plaintiff's rights under the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and practices include but are not limited to:

a.    Failure to grant accommodations when Plaintiff submitted the requisite documentation and provided documentation of a history of comparable accommodations on standardized examinations and other academic examinations.

b.    Failure to give considerable weight to Plaintiff's evaluators.

c.    Failure to provide a clear explanation for denial.

d.    Failure to engage in good faith in the interactive process to consider and implement effective accommodations to Plaintiff's disability.

e.    Failure to give considerable weight to Plaintiff's prior approval and use of accommodations in school and on standardized examinations.

f.    Failure to consider Plaintiff's request for accommodations without regard to the ameliorative effects of mitigating measures.

g.    Failure to conduct a proper review and apply appropriate legal standards to Plaintiff's request for appropriate accommodations.

h.    Failure to implement and follow NBOME's policies relating to ADA compliance.

i.    Placing an extreme burden of proof, beyond what is required by the ADA, to establish Plaintiff's disability or need for accommodations.

j.    Making unreasonable requests for documentation or requiring documentation that is not relevant to Plaintiff's need for the requested accommodation.

k.    Implementing policies and procedures, which are designed to result in denials of accommodations to people with disabilities.

86.    Plaintiff will be irreparably harmed if the NBOME continues its unlawful refusal to provide her the appropriate test accommodations as requested and unless this Court grants injunctive relief prohibiting the continued violation of Plaintiff's ADA rights and compelling the NBOME to provide the requested accommodation, in that:

a.    Plaintiff's will be terminated from medical school if she fails

another attempt at the COMLEX II CE.

b.      Given her documented need for the accommodations requested and the known impact of the absence of those accommodations on prior examinations, Plaintiff cannot pass the COMLEX II CE and COMLEX III without the additional extra time accommodation to which she is entitled under the ADA.

c.      Plaintiff's opportunity to engage in her career of choice is effectively on hold until the NBOME is compelled to comply with the ADA.

d.      Plaintiff will be unable to continue the same pace of her medical school career as her peers if she is unable to pass the COMLEX II CE at this time;

e.      Requiring Plaintiff to take the COMLEX II CE and COMLEX III without the extended time accommodation puts her at a distinct disadvantage given her disability;

f.      Reduced performance on the COMLEX II CE as a result of not receiving her requested accommodations, significantly reduces Plaintiff's future residency and professional career options.

87.     NBOME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

88.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing the NBOME to continue its unlawful refusal to provide Plaintiff with the ADA accommodations to which she is justly entitled.

89.     As a result of the NBOME's violation of the ADA, Plaintiff has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

90.    Even in the event that NBME grants testing accommodations to Ms. Lewis due to this law suit, absent expungement of failed COMLEX II CE exams and/or official acknowledgement of discrimination, Ms. Lewis must disclose and struggle to explain her past failures of the COMLEX II CE during her application process for residency programs and future employment searches, despite such failures being the result of discriminatory testing conditions and policies.

91.    NBOME's conduct constitutes an ongoing and continuous violation of the ADA.  Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.  Consequently, Plaintiff is entitled to injunctive relief under the ADA, 42 U.S.C. §12188.

## COUNT II – DECLARATORY RELIEF-ADA

92.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

93.    A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.  Plaintiff contends that Defendant violated and continues to violate her rights under the ADA as amended, 42 U.S.C. §12101, *et seq*. Based upon information and belief, Defendant denies these allegations, thus declaratory relief is therefore necessary and appropriate.

94.    Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

## COUNT II – DECLARATORY RELIEF-BREACH OF CONTRACT

95.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth

fully herein.

96.     A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.

97.     Based on information and belief, Defendant asserts that a contract exists as set forth in the COMLEX – USA Bulletin of Information that purportedly creates contractual obligations with respect to jurisdiction, venue and choice of law for an ADA discrimination action as set forth herein. Plaintiff contends that no valid contract exists. Alternatively and in addition, any agreement, which may exist, is not applicable to the herein action and that plaintiff is not in breach an alleged contract.

98.      Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

## RELIEF REQUESTED

1.     An order compelling the Defendant, or those acting as agents for or in concert with it, to immediately cease and desist from its refusal to accommodate Plaintiff's request for appropriate accommodations on the COMLEX II examinations and ordering that the Defendant immediately comply with the ADA by allowing Plaintiff the requested appropriate accommodation on the COMLEX II CE, which shall include 50% extended time on all sections of the examination over two days of testing and a distraction reduce test setting. Said accommodations shall also be made applicable to all of phases of the COMLEX examinations.

2.     Make the above order permanent and that such order be made applicable to all future examinations administered by Defendant and taken by Plaintiff.

3.     An order compelling the Defendant to redact from Plaintiff's transcript

and reporting any failed attempt of the COMLEX II CE administered without

accommodations.

        4.      An order granting such other injunctive relief as may be appropriate.

        5.      An order granting declaratory relief.

        6.      An award for attorney fees, costs, and expenses of suit incurred herein.

        7.      Award for such other and further relief as the Court may deem just and

proper.

                            Respectfully submitted

Dated: September 4, 2020                /s/ CW4713         
                                    Charles Weiner, Esquire (ID No. 52926)
                                    LAW OFFICE OF CHARLES WEINER
                                    Cambria Corporate Center
                                    501 Cambria Avenue
                                    Bensalem, PA 19020
                                    Tel:  (267) 685-6311
                                   Fax:  (215) 604-1507
                                    charles@charlesweinerlaw.com

                                /s/ MCV9214        
                                    Mary C. Vargas, Esquire (ID. No. 324005)
                                    STEIN & VARGAS LLP
                                    10 G Street NE, Suite 600
                                    Washington, D.C. 20002
                                    (240) 793-3185
                                    Mary.Vargas@steinvargas.com