IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARMAINE LEWIS,<br>                Plaintiff, | CIVIL ACTION |
| v. | |
| NATIONAL BOARD OF OSTEOPATHIC<br>MEDICAL EXAMINERS, INC.,<br>                Defendant. | NO.  20-4368 |

DuBois, J.                                                                                                December 10, 2020

**M E M O R A N D U M**

## I.  INTRODUCTION

In this case arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, plaintiff Sharmaine Lewis alleges that defendant National Board of Osteopathic Medical Examiners, Inc. ("NBOME") denied her appropriate testing accommodations on the Comprehensive Osteopathic Medical Licensing examination, Level 2-Cognitive Evaluation ("COMLEX II CE"), a standardized examination and requirement for osteopathic medical licensure.  Presently before the Court is Defendant NBOME's Motion to Transfer per § 1404(a) and Forum Selection Clause.  For the reasons set forth below, the Motion is granted.

## II.  BACKGROUND[1]

Based on the Complaint, the declaration and deposition of Joseph Flamini, Vice-President and Chief Operating Officer of NBOME, and other submissions of record, the facts of the case may be summarized as follows:

---

[1]     In addressing a motion to transfer, "all well-pleaded allegations in the complaint are generally taken as true unless contradicted by the defendant's affidavits, and the Court may examine facts outside the complaint to determine proper venue." *Holiday v. Bally's Park Place, Inc.*, CV No. 06-4588, 2007 WL 2600877, at *1 (E.D. Pa. Sep. 10, 2007).

### A. Plaintiff's ADA Claim

Plaintiff is in her final year of medical school at West Virginia School of Osteopathic Medicine (WVSOM). Compl. ¶ 7. Defendant NBOME "develops, provides and scores a three-level 'Comprehensive Osteopathic Medical Licensing Examination' ('COMLEX-USA') that is accepted by state licensing boards in all fifty states in the United States to assure that applicants for medical licensure are competent to safely practice osteopathic medicine." Flamini Decl. ¶ 4. "[E]ach COMLEX-USA examination is administered in a standardized, time-measured environment." *Id.* ¶ 8. Defendant is the sole administrator of the COMLEX-USA examinations. Flamini Dep. 29:5-11.

Plaintiff "is substantially impaired by a Specific Learning Disorder with impairments in reading. This condition substantially limits the major life activities of reading, thinking, learning, processing and taking timed examination, which are activities necessary to take the COMLEX [II] under standard conditions." Compl. ¶ 13. Plaintiff "has been approved for accommodations in various academic settings and on several standardized examinations." *Id.* ¶ 26. However, "NBOME has previously and continues to deny [plaintiff's] requests for appropriate accommodations on its examinations . . . ." *Id.* ¶ 7.

In 2017, plaintiff requested accommodations for the COMLEX I—"50% extended time and a distraction reduced testing environment." *Id.* ¶ 37. Defendant denied her request. *Id.* ¶ 41. Nevertheless, plaintiff took the COMLEX I without accommodations and passed. *Id.* ¶¶ 42-43. In January 2019, plaintiff applied for the same accommodations for the COMLEX II and was again denied. *Id.* ¶¶ 47-48. Plaintiff has taken the COMLEX II a total of three times

2

but has never passed.[2] *Id.* ¶ 66.  In order to obtain a medical degree and obtain a residency, a student of osteopathic medicine must pass COMLEX I, COMLEX II and COMLEX III.  *Id.* ¶ 8.  As a consequence, plaintiff "has been unable to obtain a residency placement and obtain her medical degree."  *Id.*

Plaintiff filed this action on September 4, 2020, seeking, *inter alia*, declaratory relief under the ADA in the form of an order compelling defendant to grant her accommodation requests with respect to the COMLEX II and all future examinations administered by defendant and taken by plaintiff.  *Id.* ¶¶ 99-100.

### B. NBOME's Motion to Transfer

Defendant is an Indiana nonprofit corporation with its principal place of business in Conshohocken, Pennsylvania.  Flamini Decl. ¶ 2; Flamini Dep. 26: 1-13.  Defendant moves to transfer this case to the United States District Court for the Southern District of Indiana.

In support of its Motion, defendant argues that plaintiff is bound to the Terms and Conditions of the COMLEX examinations.  Defendant claims that "[a]ll candidates, including [p]laintiff, intending to take a COMLEX-USA examination must use the online access system at www.nbome.org to register and pay for the examination."  Flamini Decl. ¶ 19.  Each time plaintiff registered online "to take the [COMLEX I] . . . (3 times), and again online to take the [COMLEX II] . . . (4 times), she clicked the 'Agree to Terms' button, specifically agreeing to the Terms and Conditions of the click-thru agreement."[3]  *Id.* ¶ 20.  "The Terms and Conditions were readily available to [p]laintiff by clicking the 'View Terms' button during the purchase and

---

[2]  "Plaintiff took the COMLEX [I] examination in Fairlawn, New Jersey and the [COMLEX II] examinations in Fairlawn, New Jersey, Florence, Kentucky and Louisville, Kentucky."  Flamini Decl. ¶ 11.  All of her exams were scored at NBOME's offices in Chicago, Illinois.  *Id.*

[3]  For various reasons, plaintiff has registered for the COMLEX examinations more times than she has taken them.  *See* Flamini Decl. ¶¶ 15-20.

registration process, which she must click in order to proceed." *Id*. ¶ 22. The Terms and Conditions provide, *inter alia*:

> Candidates are legally bound by the following Terms and Conditions:
>
> (1) **Bulletin of Information (BOI)**. The candidate shall comply with all the terms, conditions, procedures, and obligations of a candidate as set forth in this BOI.
>
> …
>
> (8) **Choice of Law**. The provisions, terms and conditions of this BOI, including Terms and Conditions accepted by the candidate, shall be governed by and construed only under the laws of the state of Indiana. Any claim by or for the candidate against NBOME or its employees, officers, directors, or agents, and any claim by NBOME against the candidate, arising out or relating to any COMLEX-USA examination, shall be considered and resolved only under the laws of the state of Indiana (to the exclusion of the laws of any other state, and without regard to the conflict of law provisions or law of any state), or under any applicable federal law.
>
> (9) **Forum Selection, Personal Jurisdiction**. The candidate expressly agrees that any claim, demand, or complaint whatsoever by of for the candidate against NBOME, or any of its employees, officers, directors or agents, shall be brought only in a court of competent jurisdiction located in Marion County, Indiana, to the exclusion of all other courts and jurisdictions. The candidate acknowledges and agrees that      NBOME is incorporated as a nonprofit corporation in the state of Indiana, that NBOME examinations are administered throughout the United States, that it is reasonable for the laws of the state of Indiana, the place of incorporation of the NBOME, to be applicable, and that any claim, demand, or complaint by the candidate against the NBOME, its employees, officers, directors, or agents to be brought only in a court of competent jurisdiction located in Marion County, Indiana, to the exclusion of all other state laws and jurisdictions. The candidate expressly agrees and submits to the jurisdiction of courts of competent jurisdiction located in Marion County, Indiana.

Def.'s Ex. B. Defendant contends that "[p]laintiff could not possibly proceed with the examination without first viewing [the] Terms and Conditions . . . and then accepting those Terms and Conditions by clicking the 'Agreed to Terms' button, in order to register to take and purchase the COMLEX-USA examination." Flamini Decl. ¶ 24.

In response, plaintiff claims that venue is proper in the Eastern District of Pennsylvania "because NBOME's corporate executive offices are within this District. Furthermore, NBOME

is doing business in this judicial district by virtue of administering the COMLEX [II], grading certain examinations, transacting business within this district and accordingly has sufficient contacts for personal jurisdiction." Compl. ¶ 6. Additionally, defendant does not own or lease any property or have any employees who work in Indiana. Flamini Dep. 51:7-9; 121:3-5.

On October 16, 2020, defendant filed a Motion to Transfer per § 1404(a) and Forum Selection Clause (Document No. 9). Plaintiff responded on November 20, 2020 (Document No. 15). Defendant replied on December 4, 2020 (Document No. 16). The Motion is thus ripe for decision.

### III.  LEGAL STANDARD

The question before the Court is whether this case should be transferred to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although § 1406 permits either the dismissal or the transfer of a case where venue is not proper in the original forum, § 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878-79 (3d Cir. 1995).[4]

Once a court determines that venue would be proper in another district, the court considers "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879. Typically, this analysis involves balancing private and public interests. *Id.* "The calculus changes, however, when the parties' contract contains a valid forum-selection

---

[4] In this case, venue is proper in the Southern District of Indiana because defendant is incorporated in Indiana and thus is subject to personal jurisdiction there.

clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

The Supreme Court decision in *Atlantic Marine* significantly modified the § 1404(a) transfer inquiry for cases involving valid forum selection clauses. In such cases, the analysis is limited to "public-interest factors only"; private interests are not considered. *Id.* at 64. "Because [public-interest factors] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Accordingly, a district court conducts a two-step analysis when deciding whether to enforce a forum selection clause. *See Steinmetz v. McGraw-Hill Global Education Holdings, LLC*, 220 F.Supp.3d 596, 601 (E.D. Pa. 2016). First, the court considers whether the forum selection clause is valid and enforceable. *Atl. Marine,* 571 U.S. at 62. In the Third Circuit, a forum selection clause is treated as presumptively valid unless the party objecting to its enforcement shows: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).

Second, according to *Atlantic Marine*'s modified § 1404(a) analysis, the court must consider whether "extraordinary circumstances unrelated to the convenience of the parties" militate against enforcement of the clause. *Atl. Marine*, 571 U.S. at 62. Under this framework, the plaintiff bears the burden of proving that "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 66.

## IV. DISCUSSION

In support of its Motion, defendant contends that the forum selection clause contained in the Terms and Conditions is valid and enforceable and that plaintiff assented to it. Plaintiff responds that "no enforceable agreement exists between the parties because the purported agreement"—the Terms and Conditions—"is unconscionable and illusory." Pl.'s Mem. Opp., 1. Additionally, plaintiff claims that "[t]he forum selection clause is unenforceable because it (1) is the result of overreaching by [d]efendant; (2) violates a strong public policy; and (3) the venue proposed by [d]efendant is so seriously inconvenient as to be unreasonable." *Id*.

The Court evaluates each of plaintiff's arguments in turn and determines that although the Terms and Conditions constitute a contract of adhesion, plaintiff has not met her burden of demonstrating that the forum selection clause is substantively unconscionable or unenforceable on any other ground. *See Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 239 (E.D. Pa. 2007) ("The party challenging the contractual provision has the burden to prove unconscionability.").

### A. The Terms and Conditions[5]

The Terms and Conditions constitute a type of agreement commonly referred to as a "clickwrap" agreement. A clickwrap agreement appears on an internet webpage and requires that users to consent to its terms and conditions by clicking on a dialog box on the screen in

---

[5] In evaluating plaintiff's argument that the Terms and Conditions are unenforceable, the Court will not adhere to the choice-of-law provision contained in the Terms and Conditions, which directs the Court to apply Indiana law, but instead will determine the applicable law without regard to the choice-of-law provision. *See Oak St. Printery, LLC v. Fujifilm N. Am. Corp.*, 895 F. Supp. 2d 613, 619 (M.D. Pa. 2012) ("[B]ecause the validity of the forum selection clause is in doubt, Defendant's preferred forum and choice of law . . . are not controlling"); *Bd. of Educ. of the Twp. of Cherry Hill, Camden County v. Human Res. Microsys., Inc*., No. 09–5766 (JBS/JS), 2010 WL 3882498, at *3 (D.N.J. Sept. 28, 2010) ("Since this Court has not yet determined [the issue of whether the contract is void], it is premature to decide to enforce the contract's choice-of-law provision.").

When a federal court exercises federal question jurisdiction, as in this case, the court applies the choice-of-law rules of the forum state. *Neopart Transit, LLC v. Management Consulting, Inc.*, 2017 WL 714043, at *11 (E.D. Pa. Feb. 23, 2017) (citations omitted). Before the court engages in a choice-of-law analysis, it must determine whether an actual conflict exists between the laws of the jurisdictions at issue. In this case, Pennsylvania and Indiana apply similar principles in determining whether a contract is invalid due to unconscionability. The Court thus concludes that no actual conflict exists and analyzes the Terms and Conditions under Pennsylvania law.

order to proceed with the internet transaction. *Feldman*, 513 F. Supp. 2d at 236 (citing *Specht v. Netscape Comms. Corp.,* 306 F.3d 17, 22 (2d Cir. 2002)); Kevin W. Grierson, *Enforceability of "Clickwrap" or "Shrinkwrap" Agreements Common in Computer Software, Hardware, and Internet Transactions,* 106 A.L.R. 5th 309, § 1.a n. 3 (2004); 4–GL Computer Contracts C (2006)). "To determine whether a clickwrap agreement is enforceable, courts presented with the issue apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement." *Feldman*, 513 F. Supp. 2d at 236 (citations omitted).

Plaintiff does not dispute that she had reasonable notice of the Terms and Conditions and that she manifested assent by clicking "Agree to Terms" each time she registered for a COMLEX exam. Pl.'s Mem. Opp., 10. However, she asserts that the Terms and Conditions are unconscionable and therefore unenforceable.[6]

"Unconscionability is a general defense to the enforcement of a contract or its specific terms." *Feldman*, 513 F. Supp. 2d at 239. Under Pennsylvania law, unconscionability has two elements: procedural and substantive. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). Both elements must be satisfied in order for a contract to be deemed unenforceable. In examining these two prongs, the Court employs a "sliding-scale approach" so that "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required" and vice-versa. *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Salley v. Option One Mortg. Corp.*, 592 Pa. 323 (2007)).

---

[6] Plaintiff also alleges that the Terms and Conditions are unenforceable because defendant has not presented any documentation that shows that plaintiff clicked on "Agree to Terms" during the registration process. However, Mr. Flamini testified, and plaintiff agreed, that plaintiff could not have registered for any COMLEX examinations without clicking "Agree to Terms." Flamini's description of the registration process, combined with screenshots of the online process, documentation of the Terms and Conditions, and plaintiff's admission that she "agreed" to them on multiple occasions, supports defendant's argument that plaintiff agreed to the Terms and Conditions.

### i. *Procedural Unconscionability*

"Procedural unconscionability" describes the process by which the parties entered into the contract. *Metalized Ceramics for Electronics, Inc. v. Nat'l Ammonia Co.,* 444 Pa.Super. 238, 663 A.2d 762, 767 (1995) (Olszewski, J., concurring). It has been defined by the Pennsylvania Supreme Court to mean the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222, 1228 (1981). Procedural unconscionability is generally found where the agreement is a contract of adhesion. *Alexander,* 341 F.3d at 265. A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. *Parilla v. IAP Worldwide Services, VI, Inc.,* 368 F.3d 269, 276 (3d Cir. 2004); *Rudolph v. Pa. Blue Shield,* 553 Pa. 9, 717 A.2d 508, 511–12 (1998) (Nigro, J., concurring). A contract of adhesion is not necessarily unenforceable; the party challenging it must also demonstrate substantive unconscionability. *Parilla,* 368 F.3d at 276.

Plaintiff asserts that the Terms and Conditions constitute a contract of adhesion because she had "no choice other than to execute the [clickwrap] process in order to take the COMLEX exams." Pl.'s Mem. Opp., 10. Defendant counters that the clickwrap agreement is enforceable under *Feldman v. Google Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007). In *Feldman*, the court determined that a clickwrap agreement to which the plaintiff was required to consent in order to purchase internet advertising services from Google Inc. was not procedurally unconscionable, primarily because the contract was not offered on a "take it or leave it" basis. *Id*. at 240. A number of internet providers other than Google offered similar advertising services which plaintiff was free to purchase. *Id*. at 240. Accordingly, the court in *Feldman* concluded that the agreement was not procedurally unconscionable because it did not find an "absence of meaningful choice" on behalf of the plaintiff.

9

This case is distinct from *Feldman* however, because there are no alternative testing options available to plaintiff. Osteopathic medical students must pass the COMLEX I and COMLEX II and COMLEX III—which are administered by defendant alone—in order to graduate from medical school and be considered for a residency program and medical licensure. *See* Flamini Dep. 29:5-11. In short, if second-year medical students registering for the COMLEX II do not agree to the Terms and Conditions, "their only choice would be to drop out of medical school and find a new career . . . when they have already invested significant time and resources into becoming a doctor." Pl.'s Mem. Opp., 11. Unlike the *Feldman* plaintiff who could have obtained advertising services even if he refused to agree to the Google clickwrap agreement, in this case, plaintiff could not continue pursuing a career in osteopathic medicine unless she agreed to defendant's clickwrap agreement. The Court therefore concludes that defendant had superior bargaining power and presented the Terms and Conditions to plaintiff on a "take it or leave it" basis. The Terms and Conditions thus constitute a contract of adhesion.

However, "[a] finding that a contract is one of adhesion does not require that the court find the contract unconscionable. . . . [T]he terms of the contract must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable." *Lytle v. CitiFinancial Servs., Inc.*, 2002 Pa. Super 327, ¶ 20 (2002), abrogated by *Salley*, 592 Pa. 323 (citations omitted).

        ii.      *Substantive Unconscionability*

In evaluating substantive unconscionability, the Court reviews the only provision that is essential to defendant's Motion to Transfer: the forum selection clause. The enforceability of the rest of the Terms and Conditions is irrelevant to the resolution of the Motion because the agreement contains a severability clause, which states that "[i]f any provision, term, or condition

10

of the BOI is unenforceable for any reason, the remaining provisions, terms and conditions shall remain in full force and effect, as if the unenforceable provision did not exist."[7] Def.'s Ex. A, n.12; *Feldman*, 513 F. Supp. 2d at 243 (determining that the forum selection clause was enforceable and "even if any of the provisions of the contract were unenforceable, these provisions could be modified or severed under the . . . severability clause"). Thus, in resolving the Motion, the Court focuses its inquiry on the forum selection clause.

"Substantive unconscionability" is found where the terms of a contract "unreasonably favor" the party with the greater bargaining power. *Witmer*, 434 A.2d at 1228; *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 177 (1992). Plaintiff argues that the Terms and Conditions as a whole are substantively unconscionable based on the fact that several provisions—other than the forum selection clause—are "egregiously one sided." Pl.'s Mem. Opp., 14. However, she does not make any claims regarding the substantive unconscionability of the forum selection clause.

A non-negotiated forum selection clause in a form contract is not *per se* unreasonable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991). Significantly, plaintiff presented no evidence or argument that litigating this case in the Southern District of Indiana would be "grossly favorable" to defendant. Therefore, although plaintiff has demonstrated procedural unconscionability because the contract is one of adhesion, she has not shown substantive unconscionability. Both elements are required in order to invalidate a forum selection clause based on unconscionability. Thus, the Court declines to invalidate the forum selection clause as unconscionable.

---

[7] Plaintiff also claims that the Terms and Conditions are illusory because the Amendments provision provides that "NBOME may in its sole discretion, at any time, without the consent of any candidate, amend the terms . . . ." Def.'s Ex. A, n.13. In light of the severability clause, the Court concludes that the enforceability of this provision is also irrelevant to the resolution of the pending Motion and therefore will not consider it in ruling on the Motion.

## B. The Forum Selection Clause[8]

Plaintiff next argues that the forum selection clause is unenforceable because it "entails overreaching by defendant, is contrary to public policy and under the circumstances is inconvenient."[9] Pl.'s Mem. Opp., 18. The Court evaluates each of these factors in turn.

### i. Overreaching

Plaintiff's argument that the forum selection clause is a product of overreaching is essentially identical to her procedural unconscionability argument. In short, she claims that "[d]efendant has taken advantage of this situation over medical students, who are required to successfully take COMLEX exams, by inserting onerous provisions, with no choice other than to accept 'Terms and Conditions.'" Pl.'s Mem. Opp., 19. However, defendant points out that another district court considered identical arguments with respect to defendant's forum selection clause and rejected them. *See Bahl v. New York Coll. of Osteopathic Med. of New York Inst. of Tech.*, No. 14 CV 4020 (AKT), 2017 WL 5479655, at *9 (E.D.N.Y. Mar. 31, 2017) (stating "[t]he Court can appreciate Plaintiff's argument that medical students are left with little to no choice but to agree to Defendant's Terms and Conditions if they want to pursue a career in osteopathic medicine," but finding that the forum selection clause was not a product of overreaching).

Plaintiff in this case has alleged that second-year medical students have essentially no choice when faced with defendant's Terms and Conditions. However, plaintiff has presented no evidence that defendant the forum selection clause is the product of "undue influence" or

---

[8] "Federal law controls the question of whether to enforce a forum selection clause." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (citations omitted).
[9] Plaintiff presents her argument under the first step of *Atlantic Marine*, focusing only on whether the forum selection clause is valid and enforceable. Accordingly, the Court will not evaluate whether "public-interest factors overwhelmingly disfavor a transfer" under the second step of the *Atlantic Marine* analysis.

"overweening bargaining power." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972). Thus, the Court will not invalidate the clause on the ground that it is the product of overreaching.

    *ii.* *Public Policy*

Plaintiff next claims that the forum selection clause is unenforceable because "there is a strong public policy in this forum to enforce the ADA and ensure entities, which do business in this forum comply with the ADA." Pl.'s Mem. Opp., 20. Because defendant's executive offices, General Counsel and the "department, which processes and issues decisions concerning accommodated testing" are all located in Conshohocken, Pennsylvania, plaintiff asserts that this District has a greater interest in adjudicating plaintiff's claim than the Southern District of Indiana.

In support of her argument, plaintiff cites *Martinez v. Bloomberg LP* in which the Second Circuit stated, "'a strong federal public policy favoring enforcement of the civil rights laws' requires that courts invalidate a forum selection clause where enforcement 'would frustrate that purpose.'" 740 F.3d 211, 218 (2d Cir. 2014) (quoting *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir.1988)). However, plaintiff does not claim that transferring this case to the United States District Court for the Southern District of Indiana would frustrate the purpose of the ADA. Thus, the Court rejects plaintiff's argument that the forum selection clause should be invalidated on the basis of public policy.

    *iii.* *Convenience*

To adequately support her claim that litigating this matter in Indiana would be so seriously inconvenient as to be unreasonable, plaintiff must show more than "mere inconvenience or additional expense" and demonstrate that she would be "effectively denied her day in court." *Mark IV Transp. & Logistics, Inc. v. National Independent Contractor Ass'n, Inc.*,

13

No. 2:13–02614, 2014 WL 69890, at *4 (D.N.J. Jan. 9, 2014). Plaintiff asserts that litigating this matter in Indiana would be seriously inconvenient because she "may need to call as witnesses at the hearing/trial in this matter who may include [d]efendant's employees in the accommodated testing department and its General Counsel and any other employees involved with the policies and procedures concerning test accommodations." Pl.'s Mem. Opp., 21. She also claims that she may face financial hardship as an indebted medical student who will potentially have to arrange for "transportation and lodging of her expert(s) and counsel." *Id*. In response, defendant maintains that Indiana is an appropriate forum because it is its place of incorporation and that it is not "out-of-the way" for plaintiff, but is much closer to her reported home in Huntington, West Virginia than this Court is in Philadelphia, Pennsylvania. Mot., 14 n.5. Based on these facts, the Court determines that the potential inconvenience plaintiff may face in trying the case in the Southern District of Indiana would not "effectively deny her [a] day in court."

## V.    CONCLUSION

For all of the foregoing reasons, the Court concludes that plaintiff has not made the required "strong showing" that the forum selection clause is invalid as the product of overreaching, contrary to public policy or seriously inconvenient. *Bremen,* 407 U.S. at 15. Thus, Defendant NBOME's Motion to Transfer per § 1404(a) and Forum Selection Clause is granted. An appropriate order follows.